**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MORRIS BEDARD,

          Plaintiff,

vs.

WYNN LAS VEGAS, LLC, *et al.*,

          Defendants.

Case No.: 2:18-cv-01683-GMN-GWF

**ORDER**

Pending before the Court are the Motions to Dismiss, (ECF Nos. 8, 14), filed by Defendants Wynn Las Vegas, LLC ("Wynn"), and John Choate ("Choate") (collectively "Defendants"). Plaintiff Morris Bedard ("Plaintiff") filed a Response, (ECF No. 16), and Defendants filed a Reply, (ECF No. 17). For the reasons stated herein, Defendants' Motions to Dismiss are **GRANTED in part and DENIED in part**.

**I.     BACKGROUND**

This case arises out of Plaintiff's allegations of misconduct against his former employer, Wynn, and the director of security, Choate. (Compl., Ex. 1 to Pet. of Removal, ECF No. 1-1). Plaintiff began his employment at Wynn on December 18, 2006, as a Casino Security Officer. (*Id.* ¶ 4). In this position, Plaintiff was responsible for both preparing comprehensive security reports and training/evaluating new and existing officers. (*Id.* ¶¶ 5, 6).

In May 2016, Wynn hired Choate as the new executive director of Wynn's security. (*Id.* ¶ 8). As security director, Choate implemented a security program called the Special Operations Guards ("SOG"). (*Id.* ¶ 10). The goal of this program was to "prevent[] an armed terrorist attack or active shooter situation at Wynn properties." (*Id.*). Choate recruited former US Marine Embassy Guards for these positions. (*Id.* ¶¶ 11, 12).

Following SOG's formation, Plaintiff alleges that casino officers became displeased with management over perceived "inequity problems." (*Id.* ¶¶ 15, 16). Specifically, Plaintiff alleges that casino officers were displeased that SOG members received over double their salary. (*Id.*). Additionally, Plaintiff alleges that the casino officers were displeased because they were "denied any access to becoming a member of the SOG team," despite having "similar or greater experience." (*Id.*). As a result of these perceived inequities, Plaintiff and the casino officers began inquiring into the unionization process. (*See id.* ¶¶ 17–20).

On February 1, 2017, Choate and a human resource manager, Brian Parker, met with Plaintiff regarding these unionization efforts. (*Id.* ¶ 22). In this meeting, Choate allegedly threatened to terminate Plaintiff's employment if he continued trying to form a union. (*Id.* ¶ 23). In addition, Choate allegedly made numerous derogatory comments regarding Plaintiff's age. (*Id.* ¶ 25). At the conclusion of the meeting, Choate requested that Plaintiff help identify and correct the casino officers' complaints. (*Id.* ¶ 26).

In accordance with Choate's request, Plaintiff allegedly approached the security department supervisor, Paul Roberson, with a list of the casino security officers' complaints and proposed solutions. (*Id.* ¶ 28). Following their conversation, however, Plaintiff asserts that Paul Roberson completed an "Employee Voluntary statement" with a highly inaccurate and misconstrued account of their meeting. (*Id.* ¶ 29). Based on Roberson's report—as well as a "comment" Plaintiff had purportedly made to a member of the SOG team—Wynn initiated a misconduct investigation against Plaintiff. (*Id.* ¶ 30).

On February 22, 2017, after concluding its investigation, Wynn terminated Plaintiff for willful misconduct and violation of company policy. (*Id.* ¶ 32). During the investigation and termination process, Plaintiff claims that he was "not given access to the steps of the Progressive Discipline process clearly stated in Wynn employee Handbook." (*Id.* ¶ 33). On March 6, 2017, Plaintiff filed a complaint against Wynn through the SPFPA International

Union and National Labor Relations Board, asserting that Wynn terminated Plaintiff in retaliation for protected activities. (*Id.* ¶ 37). On August 14, 2017, an agreement was reached between the SPFPA International Union and Wynn to "drop all references to Plaintiff being terminated for protected activities" in return for Wynn "agreeing to post protected activity safeguards on employee boards." (*Id.* ¶ 38). Plaintiff claims he was not given an opportunity to participate in this agreement process. (*Id.* ¶ 39).

On May 30, 2017, Plaintiff filed a complaint against Wynn through the Equal Employment Opportunity Commission ("EEOC") for age discrimination. (*Id.* ¶ 41). Plaintiff based this complaint on Wynn's failure to discipline Choate for his derogatory comments towards Plaintiff's age and failure to consider him for a promotion. (*See id.* ¶ 45). The EEOC issued its right to sue letter on December 15, 2017. (*Id.* ¶ 46). On July 26, 2018, Plaintiff initiated this action in state court, alleging claims for: (1) violation of federal statutes; (2) breach of contract; and (3) negligence. On September 4, 2018, Defendants removed the case to this Court based on federal-question jurisdiction. (Pet. of Removal, ECF No. 1).

## II. **LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added). In order to survive a motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so

requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992).

## III. DISCUSSION

### A. Federal Claims

Defendants argue, *inter alia*, that Plaintiff has failed to state a claim for "violation of federal statutes." (First MTD 6:10–8:27, ECF No. 8); (Second MTD 7:15–11:7, ECF No. 14). In raising this argument, Defendants correctly note that Plaintiff's Complaint fails to identify which specific federal statutes are purportedly at issue. (Second MTD 7:16–17). Nonetheless, Defendants infer that Plaintiff seeks relief for violations of the National Labor Relations Act ("NLRA") and Age Discrimination in Employment Act ("ADEA"). (First MTD 6:16–18). Under these statutes, Defendants assert that Plaintiff fails to state a claim as a matter of law. (*Id.* 6:18–19).

In response, Plaintiff does not contest that his complaint fails to adequately state a federal cause of action. Rather, Plaintiff argues that the Court lacks federal-question jurisdiction precisely because his requested relief sounds solely in state law. (Pl.'s Resp. 6:15–16, 7:3–7, ECF No. 16).[1] According to Plaintiff, although he has "alleged that federal laws may have been broken by defendant, this case is concerned with a cause of action that occurred in Nevada, between a Resident of Nevada and his employer; a Nevada limited liability company." (*Id.* 6:12–15).

---

[1] Plaintiff filed his Response five days after the deadline and did not move for an extension. Nonetheless, as Plaintiff's Response raises a question as to the Court's jurisdiction over this matter, the Court considers the response as timely. *See* Fed. R. Civ. P. 12(h).

Plaintiff's arguments are directly contradicted by the plain language of his Complaint. Under 28 U.S.C. § 1331, a federal district court has original jurisdiction over all civil actions arising under the laws of the United States. *See* 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Here, Plaintiff's Complaint explicitly alleges "violation of federal statutes" under the claims for relief section. (*See* Compl. 11:6–17, Ex. 1 to Pet. of Removal). Furthermore, the Complaint contains allegations that plainly implicate federal issues such as age discrimination and unfair labor practices. Plaintiff's Complaint therefore facially invokes a federal question such that Defendants' removal was proper. Nonetheless, Plaintiff now represents to the Court that he never intended to seek relief under a federal cause of action. In raising this assertion, Plaintiff does not oppose Defendants' arguments concerning failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court therefore finds that Plaintiff has abandoned his federal claims and consented to their dismissal. *See* Local Rule 7-2(d). The Court grants Defendants' Motions to Dismiss Plaintiff's claim for "violation of federal statutes."

**B. Supplemental Jurisdiction**

Plaintiff's remaining causes of action fall under state law breach of contract and negligence.[2] Jurisdiction over state law claims arises under supplemental jurisdiction. *See* 28 USC § 1367. Supplemental jurisdiction is a doctrine of discretion, not of right. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997); *United Mine Workers of Am. v. Gibbs*,

---

[2] Although not raised in the Complaint, Plaintiff also references a breach of the covenant of good faith and fair dealing claim in his Response to Defendants' Motions to Dismiss. (Resp. 10:24–25).

383 U.S. 715, 726 (1966). A federal court may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed claims over which it has original jurisdiction. *See* 28 USC § 1367(c). The decision to decline to exercise supplemental jurisdiction under section 1367(c) should be informed by the values of economy, convenience, fairness, and comity. *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

Here, Defendants' sole basis for removal from state court was Plaintiff's claim for "violation of federal statutes." (*See* Pet. of Removal). As Plaintiff's federal claim has been dismissed, the Court finds that the above factors weigh in favor of declining supplemental jurisdiction over Plaintiff's remaining state law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). Importantly, this case is in the early stages of litigation, and the Court has not taken substantive action on Plaintiff's state law claims. The Court therefore declines supplemental jurisdiction and remands this action to Nevada's Eighth Judicial District Court. *See Maniar v. Federal Deposit Ins. Corp.,* 979 F.2d 782, 784–85 (9th Cir. 1992) (noting that a district court has power to remand a case *sua sponte* when it lacks subject matter jurisdiction); *May v. California Hotel & Casino, Inc.*, No. 2:13–CV–00066–GMN, 2014 WL 1494231, at *5 (D. Nev. Apr. 14, 2014) (declining to exercise supplemental jurisdiction over state law claims and remanding the case to state court).

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss, (ECF Nos. 8, 14), are **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's federal claims are dismissed from this action without prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to Nevada's Eighth Judicial District Court.

The Clerk of Court is instructed to close the case.

**DATED** this __30__ day of June, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge